George Teagarden Livestock Commissioner Kansas Animal Health Department 708 SW Jackson Topeka, Kansas 66603-3714
Dear Mr. Teagarden:
You bring to our attention two bills regarding feral swine[1] that were passed by the 2006 Legislature. In relation to these bills, you ask whether the provisions conflict and, if so, whether they may be reconciled or are mutually exclusive.
Pursuant to K.S.A. 2005 Supp. 47-1809, as amended by L. 2006, Ch. 114, § 1,[2] "the release, killing, wounding or attempted killing or wounding of feral swine for the purpose of sport, pleasure, amusement or production of a trophy"[3] is generally prohibited. However, exceptions are provided for eradication by the Livestock Commissioner[4] and for "owners or legal occupants of land, the employees of such owners or legal occupants or persons designated by such owners or legal occupants."[5] Under the latter provision, the listed persons are allowed to kill feral swine if the swine are found on their premises or destroying their property.
You question whether the statute as amended is in conflict with the third section of a proviso in the 2006 omnibus appropriations bill, found at L. 2006, Ch. 216, § 53,[6] which appears to allow the killing of feral swine without the limitations imposed by K.S.A. 2005 Supp. 47-1809, as amended by L. 2006, Ch. 216, § 53. The full proviso states:
"Provided, That expenditures shall be made by the Kansas animal health department from the operating expenditures account of the state general fund to establish a feral swine monitoring and reporting system, which shall include collection of reports of feral swine by a toll-free telephone number, postcard, or electronic communication through the internet to the Kansas animal health department, and the Kansas animal health department shall maintain a database of information collected through such feral swine monitoring and reporting system, which shall also be made available to the Kansas pork industry to accomplish the goal of eradicating feral swine: Provided further, That the Kansas animal health department shall compile quarterly reports of the information collected through such feral swine monitoring and reporting system and shall make such information available to the public and the Kansas pork industry. And provided further, Thatthe Kansas animal health department shall incorporate methodsintended to control and eradicate feral swine, including, but notlimited to, aerial hunting, trapping, snaring and theestablishment of a bounty program."[7]
The Legislature appears to have dealt with the problem of feral swine in several distinct ways: First, by prohibiting the importation, transportation or possession of feral swine as well as prohibiting their release on public or private land;[8]
second, while generally prohibiting hunting of feral swine "for sport, pleasure, amusement or production of a trophy," by allowing land owners and other legal occupants, their employees and designees to kill destructive feral swine if in possession of a permit issued by the Livestock Commissioner;[9] and third, by directing the Animal Health Department to provide for a feral swine control and eradication program that involves "aerial hunting,[10] trapping, snaring and the establishment of a bounty program."[11]
The apparent conflict is between the feral swine hunting for sport prohibition found in K.S.A. 2005 Supp. 47-1809(a), as amended by L. 2006, Ch. 114, § (1)(a) and the "aerial hunting" and "bounty program" authorization found in L. 2006, Ch. 216, § 53 proviso. In resolving this seeming statutory dilemma, we are guided by a primary rule of statutory construction:
 "In construing statutes and determining legislative intent, several provisions of an act or acts, in pari materia, must be construed together with a view of reconciling and bringing them into workable harmony if possible. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted."[12]
In our opinion, the Legislature acted consistently, harmoniously and sensibly by authorizing a government sponsored feral swine control and eradication program along with a ban on hunting these animals except for property owners and other legal occupants, their employees and designees. The prohibition against killing feral swine "for sport, pleasure, amusement or production of a trophy" does not preclude the Department from controlling and eradicating feral swine by aerial gunning, trapping, snaring or through a bounty program.[13] Which of these or other methods would be more efficient and cost effective is, we believe, left to the sound discretion of the Department.[15]
Very truly yours,
 Phill Kline ttorney General
 Camille Nohe Assistant Attorney General
PK:JLM:CN:jm
[1] Feral swine" refers to "any untamed or undomesticated hog, boar or pig; swine whose reversion from the domesticated state to the wild state is apparent; or an otherwise freely roaming swine having no visible tags, markings or characteristics indicating that such swine is from a domestic herd, and reasonable inquiry within the area does not identify an owner." K.S.A. 2005 Supp.47-1809(a), as amended by L. 2006, Ch. 114, § 1(a).
[2] Formerly 2006 HB 2899, § 1.
[3] L. 2006, Ch. 216, § 1(d).
[4] L. 2006, Ch. 216, § 1(k).
[5] L. 2006, Ch. 216, § 1(l).
[6] Formerly 2006 Sen. Subst. for HB 2968, § 52.
[7] Emphasis added. We note that since this provision was part of the omnibus appropriations bill, its provisions last for only one year unless reenacted.
[8] K.S.A. 2005 Supp. 47-1809, as amended by L. 2006, Ch. 114, § 1(b) and (c).
[9] K.S.A. 2005 Supp. 47-1809, as amended by L. 2006, Ch. 114, § 1(l).
[10] We understand from the Kansas Department of Wildlife and Parks that the phrase "aerial hunting" is a misnomer and should more appropriately be known as "aerial gunning."
[11] L. 2006, Ch. 216, § 53 proviso.
[12] Pankratz Implement Co. v. Citizens Nat. Bank, Kan.S.Ct., No. 91,721, Syl. 3 (dec'd March 17, 2006) (emphasis added).
[13] In reaching this conclusion, we are assuming that the Animal Health Department has permission to enter private land,(14)
 [14] We do not address any 4th Amendment issues that could arise in the absence of such permission.
[15] E.g., we have learned from the Kansas Department of Wildlife and Parks that the practice of bounty hunting is considered counter-effective because it would be contrary to massing of the populations, causing the dispersion of the animals into smaller populations that would then cause them to range further. June 28, 2006 letter from Christopher J. Tymeson, Chief Legal Counsel, Kansas Department of Wildlife and Parks.